NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

| | : | |
|---|---|---|
| MICHELLE LIN ACCOMANDO, | : | Hon. Faith S. Hochberg, U.S.D.J. |
| | : | |
| Plaintiff, | : | Civil Case No. 13-1391 (FSH) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | November 14, 2014 |
| | : | |
| Defendant. | : | |
| _____ | : | |

 This matter comes before the Court upon Plaintiff's request for review of a final decision of the Commissioner of the Social Security Administration pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). This matter has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**I.  BACKGROUND**

**A.  Medical History**

 Michelle Lin Accomando ("Plaintiff") was born on July 23, 1973. Plaintiff first visited Dr. Peter H. Schmaus, an orthopedic surgeon, on April 6, 2006, shortly before she stopped working. Plaintiff complained of numbness in the lumbar spine and Dr. Schmaus noted that she could not sit or stand, appeared stiff and walked with a mild gait. An MRI performed on April 17, 2006, showed a minimal disc bulge at the C5-C6 level. As a result, Dr. David Porter, Plaintiff's family doctor, examined her on September 5, 2006 and diagnosed her with fibromyalgia. On July 14, 2008, Dr. Conte completed a Functional Capacity Assessment for

Plaintiff and claimed that Plaintiff met the American Rheumatological criteria for fibromyalgia due to her multiple tender points.

On January 9, 2007, Dr. Bansil, a state agency psychiatric consultant reviewed the medical evidence and assessed that Plaintiff had mild restrictions on activities of daily living. In a mental residual functional capacity assessment from January 9, 2007, Dr. Bansil found that Plaintiff had no more than moderate limitations of her sustained concentration and persistence.

On December 29, 2009, Dr. Chaudry opined that Plaintiff was experiencing memory loss and that her psychiatric diagnosis included bipolar disorder, anxiety, and depressive disorders.

Plaintiff received a neurological examination on September 1, 2010 from Dr. Richard Mills, which found that Plaintiff was awake and alert had sensation to pinprick and light touch, normal motor strength, intact range of motion except for the right shoulder, and could fully extend her hands, make a fist, and separate papers appropriately.

On March 17, 2011, Dr. Martin Fechner testified as a medical expert that Plaintiff's physical impairments did not meet or equal an impairment in the Listing of Impairments. Dr. Fechner opined that Plaintiff could perform a wide range of sedentary work activity.

The Administrative Law Judge ("ALJ") Donna A. Krappa found that Plaintiff had severe impairments, which were fibromyalgia, depression, anxiety, and multiple musculoskeletal disorders of the neck, lower back, and right shoulder. However, the ALJ found that Plaintiff's severe impairments did not meet or equal an impairment listed in the Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. Furthermore, the ALJ found that the Plaintiff retained the residual functional capacity to perform a range of sedentary work with postural and mental limitations.

### B. Vocational History

Plaintiff possesses a high school education, can read and write English, and worked as a cashier in a supermarket. Plaintiff also worked as an administrative assistant in an office supplies business, a switchboard operator, ophthalmic assistant, and technician in a medical office.

Regarding regular activities, Plaintiff testified that she washes her own clothes and uses a computer. She watches television four to five hours a day, reads, plays cards once a month, and walks up to one half mile. She shops for food and personal items once or twice a month.

Rocco J. Meola ("Mr. Meola") testified as a vocational expert at the July 14, 2008 and March 17, 2011 hearings. During the March 27, 2011 hearing, the ALJ asked Mr. Meola a hypothetical question using Plaintiff's physical and mental symptoms. Mr. Meola testified that the hypothetical individual could not perform Plaintiff's past work. However, Mr. Meola also testified that there were other jobs the individual could perform and identified jobs of document prep worker, hand mounter, carding machine operator, and cutter and paster, which existed in the aggregate of 900 in the local economy and in excess of 5,000 in the national economy.

### C. Procedural History

Plaintiff protectively filed an application for disability insurance benefits on August 22, 2006. A hearing was held on July 14, 2008 before ALJ Krappa, and on January 6, 2009, ALJ Krappa issued a decision finding Plaintiff was not disabled. Plaintiff requested review by the Appeals Council. On December 23, 2009, the Appeals Council vacated the hearing decision and remanded the case to the ALJ for further administrative proceedings. The ALJ held supplemental hearings and on September 22, 2011, ALJ Krappa issued another decision finding that Plaintiff was not disabled. Plaintiff requested review of the decision and the Appeals

Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks review in this Court. Plaintiff has exhausted administrative remedies in this matter and this Court has jurisdiction for judicial review pursuant to 42 U.S.C. 405(g). Plaintiff argues that she has been disabled since April 24, 2006 and continues to be under such disabled within the meaning of the Social Security Act. Plaintiff claims that she provided proof of her ongoing disability and the Administrative Law Judge erred because her decision is not supported by substantial evidence in the record as a whole.

## II.  THE DISABILITY STANDARD

Under the Social Security Act, an individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3). An individual will be found disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

The Commissioner applies the following five-step sequential analysis to determine whether an individual is disabled.  20 C.F.R. §§ 404.1520(a), 416.920.  If at any step a decision can be made as to whether an individual is disabled, the analysis is complete and does not proceed to the remaining steps. *Id.*

4

*Step One - Substantial Gainful Activity:* The Commissioner must first determine whether the claimant is presently employed, and whether that employment constitutes substantial gainful activity. 20 C.F.R. § 416.972. Substantial activity is work "that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). Gainful activity is any work "that you do for pay or profit." 20 C.F.R. § 416.972(b). If the Commissioner concludes that an individual is substantially and gainfully employed then that person cannot be disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b).

*Step Two - Severe Impairment:* If the individual is not engaged in any substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). The impairment is severe if it "significantly limits [the individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). Additionally, in order to meet the duration requirement, the impairment "must have lasted or must be expected to last for a continuous" 12 month period, unless it "is expected to result in death." 20 C.F.R. § 404.1509. If the individual fails to demonstrate a severe impairment or fails to meet the duration requirement, the disability claim will be dismissed. 20 C.F.R. § 404.1520(c).

*Step Three - Listed Impairment:* If the individual successfully demonstrates a severe impairment, the Commissioner must then determine whether the impairment meets or equals an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meet or equal

a listed impairment, then she will be found to be disabled without considering her age, education, and work experience.  20 C.F.R. § 404.1520(d).

*Step Four - Residual Functional Capacity:* If the severe impairment does not meet or equal one of the impairments listed in Appendix 1, then the Commissioner must consider whether, despite the claimant's impairment, the claimant still possesses the RFC to perform his past relevant work.  20 C.F.R. § 416.920(e).

 Past relevant work is defined as, "work that [the individual has] done within the past 15 years, that was substantial gainful activity, and lasted long enough for [her] to learn to do it."  20 C.F.R. § 404.1560(b)(1). If the individual has the capacity to perform past work, she will be found not disabled.  If not, the Commissioner moves on to the fifth and final step.  20 C.F.R. § 416.920(e)-(f).

*Step Five - Other Work:* Finally, if the individual is unable to perform past relevant work, the Commissioner considers the individual's RFC, age, education, and work experience to determine whether she can adjust to other work.  20 C.F.R. § 404.1520(a)(4)(v).  This work must exist in significant numbers in the national economy.  20 C.F.R. § 404.1560(c)(1).  If the individual is unable to adjust to other work, she will be found to be disabled.  However, if the Commissioner finds that claimant can adjust to other work, then she will be found not disabled.

This five step sequential analysis involves a shifting burden of persuasion.  <u>Wallace v. Sec'y of Health and Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  The individual bears the burden of persuasion for steps one through four. However, if the analysis reaches step five, the burden shifts to the Commissioner to prove that the individual is able to perform other work in the national economy.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

### III. STANDARD OF REVIEW

This Court must review the final decision of the Commissioner to determine whether the administrative record contains substantial evidence to support his decision. 42 U.S.C. § 405(g); See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986). "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it." Snee v. Sec'y of Health and Human Servs., 660 F. Supp. 736, 739 (D.N.J. 1987) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)).

### IV. REVIEW OF THE COMMISSIONER'S DECISION

Plaintiff contends that the ALJ's findings lack substantial evidence because: (A) the ALJ allegedly made an error of law by failing to properly consider the medical opinion of various doctors; (B) the ALJ allegedly fails to explain why she rejected certain medical opinions regarding Plaintiff's condition; and (C) the ALJ allegedly failed to properly evaluate the Plaintiff's credibility.

**A. ALJ's Analysis of Dr. Conte, Dr. Porter, and Dr. Chaudry**

Plaintiff contends that the ALJ made an error of law by rejecting Dr. Conte, Dr. Porter and Dr. Chaudry's opinions. Specifically, Plaintiff notes that the ALJ rejected Dr. Conte's opinion

because it was "a checklist" and was not in narrative form.  Secondly, Plaintiff alleges "ALJ Krappa continues to show her predisposition toward denying this claim in her repeated refusal to credit the opinion of Dr. David Porter because of the lapse of time between the opinion and the last date of treatment."  Appeals Council told her to consider the report in context.  Instead, Plaintiff argues ALJ Krappa copied and pasted her original opinion regarding the age of the report and thus failed to comply with the Appeals Council Order.  Furthermore, Plaintiff alleges that the ALJ did not accurately explain why she rejected the opinions of the treating sources.  See Fargnoli v. Massanari, 247 F.3d 34 (3rd Cir. 2001) (finding that an ALJ must provide adequate reason for rejecting treating source opinion).

Defendant argues that under Social Security regulations an ALJ will afford controlling weight to a treating physician's opinion only if the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record.  20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).  Moreover, "the Commissioner retains the ultimate responsibility for determining an individual's residual functional capacity and whether an individual meets the statutory definition of disability."  20 C.F.R. §§ 404.1527(e)(1), 404.1527(e)(2), 416.927(e)(1), and 416.927(e)(2).  Therefore, an ALJ is not required to accept medical opinions.  20 C.F.R. §§ 404.1527(3) and 416.927(e).  Specifically, Defendant notes that ALJ Krappa did not accept Dr. Conte's assessment because the report was internally inconsistent and based on plaintiff's subjective symptoms rather than objective findings.  Moreover, the ALJ did not accept Dr. Porter's assessment because he had not treated the plaintiff in two years.

Defendant claims that the ALJ considered the forms completed by Dr. Conte and Dr. Chaudry for the State of New Jersey Division of Family Development, in which the doctors

opined that Plaintiff was disabled. Furthermore, Defendant claims that the ALJ gave multiple reasons for not accepting these opinions, including the fact that the forms were completed for purposes of enabling the Plaintiff to qualify for public assistance from the State of New Jersey, rather than for Social Security disability purposes. Defendant notes that ALJ Krappa acknowledged both medical forms and pointed out that State and Federal programs apply different standards for determining disability. Defendant asserts that the ALJ was not required to accept the statements made by Dr. Conte and Dr. Chaudry because the statements were prepared for the purpose of exempting Plaintiff from working in order to qualify for state welfare benefits. Defendant contends that Plaintiff conceded this point. See Plaintiff's Memorandum at 22-3.

The case relied upon by the Plaintiff is distinguishable because the Fargnoli Court found it impossible to determine whether the ALJ's finding was supported by substantial evidence. 247 F.3d at 40. The Fargnoli Court noted that "the ALJ (1) failed to evaluate adequately all relevant evidence and to explain the basis of his conclusions and (2) failed to explain his assessment of the credibility of, and weight given to, the medical evidence and opinions from Fargnoli's treating physicians that contradict the ALJ's finding that Fargnoli can perform light work." Id. Here, ALJ Krappa explained the basis for her conclusions and her assessment of the credibility and weight given to medical opinions from Plaintiff's physicians. The ALJ specifically noted that she did not accept Dr. Conte's assessment because his report was internally inconsistent and seemed to be based more on plaintiff's subjective symptoms than on objective findings. Furthermore, the ALJ did not accept Dr. Porter's assessment because he had not treated the plaintiff in two years. Thus, ALJ Krappa provided the necessary explanation for her findings.

Regarding Plaintiff's allegation that ALJ Krappa failed to follow the Appeals Council's order to consider Dr. Porter's report in context, ALJ Krappa considered Dr. Porter's opinion, noting

9

Dr. Porter had not examined the plaintiff in two years.  On remand, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 205 (3d Cir. 2008).  Here, ALJ Krappa considered Dr. Porter's opinion and noted Dr. Porter's assessment that Plaintiff was disabled and had restricted ability to sit, bend, lift, and stoop.  Given these three separate considerations it appears that ALJ Krappa gave adequate consideration to Dr. Porter's opinion.  See Johnson, 529 F.3d at 205 (finding that the ALJ's decision complied with 20 C.F.R. § 404.977(b) and devoted ample consideration to the treating physician's opinion when the ALJ described three notes about the plaintiff's impairments written by the doctor in detail). Moreover, it is important to note that the Appeals Council instructed the ALJ to consider the opinion in context.  Here, Dr. Porter's opinion, in context of the whole record, is inconsistent with other substantial evidence of the record.  Thus, ALJ Krappa was correct in finding that Dr. Porter's opinion lacked controlling weight.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Johnson, 529 F.3d at 202 (finding the Commissioner will afford controlling weight to a treating physician's opinion on the issues only if the opinion is not inconsistent with other substantial evidence of record).

    **B.  ALJ's Analysis of Dr. Mills' Medical Opinion**

Plaintiff claims that the ALJ failed to consider Dr. Mills' report, which constitutes legal error.  20 CFR § 404.1527.  Plaintiff claims that Dr. Fechner did not know or understand the discrepancy between RFC and the reported findings, thus ALJ under 20 CFR § 404.1519p(b) had a duty to contact Dr. Mills to resolve the conflict.  Morales v. Apfel, 225 F.3d 310, 317 (3rd Cir.

2000) (finding that a doctor's opinion has less probative force when the doctor never examined the patient).

Defendant claims that the ALJ found that Dr. Mills' opinion was in conflict with the opinion of Dr. Fechner, the medical expert, and the ALJ reasonably chose to rely on Dr. Fechner's opinion. Dr. Fechner testified that Dr. Mills' assessment was not consistent with Dr. Mills' reported physical findings. Defendant argues that the ALJ was entitled to rely on Dr. Fechner's opinion because Dr. Fechner was a medical expert and his opinion was based on his review of the entire medical record. See C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2).

Section 416.912(e)(1) provides that a medical source will be recontacted for purposes of clarification "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." See Johnson, 529 F.3d at 204. An ALJ's rejection of a treating physician's testimony or opinion does not trigger the ALJ's duty to give the doctor an opportunity to explain testimony that the record overwhelmingly disputed. See Johnson, 529 F.3d at 205 (finding the language in § 416.912(e)(1) is preceded by a qualification and recontact will proceed if "the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled"). Here, the ALJ found that the record overwhelmingly disputed Dr. Mills' opinion. Thus, the ALJ did not have a duty to recontact Dr. Mills for clarification and, therefore the ALJ did not fail to consider Dr. Mills' report.

### C. Evaluation of Fibromyalgia

Plaintiff notes that on July 25, 2012 a new Social Security Ruling, SSR 12-2P Evaluation of Fibromyalgia, went into effect. This appeal relates to ALJ Krappa's decision from September

22, 2010, therefore Plaintiff claims the new ruling should be applied in this review. Furthermore, Plaintiff claims that she suffers from Fibromyalgia and although the ALJ conceded that Plaintiff's Fibromyalgia is a severe impairment, the ALJ discounted her claim due to Dr. Conte's Fibromyalgia Functional Capacity Assessment being in checklist form.  Plaintiff claims that the ALJ's failure to credit the findings in Dr. Conte's report due to its checklist form was legal error.

    Defendant claims that the ALJ properly evaluated Plaintiff's Fibromyalgia.  The ALJ and Dr. Fechner found that Plaintiff suffered from fibromyalgia.  However, Dr. Fechner opined that despite Plaintiff's fibromyalgia and other impairments, Plaintiff retained the ability to perform sedentary work.  Defendant claims that the ALJ reasonably relied upon Dr. Fechner's expert opinion because Dr. Fecnher's opinion was based on his review of the entire medical record.

    The new Social Security Ruling, SSR 12-2P does not affect ALJ Krappa's ruling because ALJ Krappa found Plaintiff's Fibromyalgia to be a severe impairment.  Thus, the new ruling, which helps establish how to evaluate Fibromalyagia, is irrelevant because the severity of Plaintiff's Fibromyalgia was not discounted in ALJ Krappa's ruling.  Instead, ALJ Krappa relied on Dr. Fechner's testimony that Plaintiff, despite her Fibromyalgia and other impairments, could perform certain sedentary work.  Regarding Plaintiff's second allegation that ALJ Krappa did not properly evaluate Dr. Conte's assessment, ALJ Krappa specifically noted that she did not accept Dr. Conte's assessment because his report was internally inconsistent and seemed to be based more on plaintiff's subjective symptoms than objective findings.  ALJ Krappa did not reject Dr. Conte's assessment because it was in "check-list" form, as Plaintiff alleges.  Moreover, the new 12-2P ruling states that for Fibromyalgia "as in all claims for disability benefits, we need objective medical evidence."  <u>Soc. Sec. Ruling, SSR 12-2P; Titles II & XVI: Evaluation of</u>

Fibromyalgia, SSR 12-2P (S.S.A July 25, 2012).  Since ALJ Krappa found that Dr. Conte's opinion relied on subjective findings, not objective evidence, Dr. Conte's opinion fails to satisfy the 12-2P test.  Given Dr. Fechner's testimony and ALJ Krappa's determination that Dr. Conte's assessment was inconsistent and based on subjective symptoms and not objective findings, ALJ Krappa did not fail to evaluate Dr. Conte's opinion.

### D. The ALJ Assessment of Accomando's Credibility

Plaintiff claims that ALJ Krappa did not properly evaluate the credibility of Plaintiff's subjective complaints of pain and other symptoms.  Plaintiff claims that total disability is not the standard under which Social Security Disability claims are evaluated.  "The law does not require a complete restriction from recreational or other activities as a prerequisite to a finding of disability."  Rieder v. Apfel, 115 F.Supp.2d 496, 504-505 (M.D. Pa. 2000).

Defendant claims that the ALJ properly assessed the credibility of Plaintiff's allegations of pain, functional limitations, and other symptoms, and found that Plaintiff's allegations were not credible.  Defendant asserts that to establish disability, there must be more than subjective complaints.  Defendant asserts that the ALJ reasonably found that Plaintiff's statement concerning her intensity, persistence, and limiting effects of her alleged symptoms were not credible to the extent that they were inconsistent with her residual functional capacity for a range of sedentary work.  Defendant claims that the ALJ correctly noted that the Plaintiff's mental conditions of depression and anxiety improved and stabilized with treatment.  Moreover, Defendant asserts that the ALJ properly found that Plaintiff's allegations were inconsistent with her activities and lifestyle.  Defendant claims that the ALJ considered Plaintiff's symptoms and credibility in evaluating Plaintiff's residual functional capacity.  The question is whether the

ALJ's credibility analysis and findings are supported by the evidence of the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929.

To establish disability, there must be more than subjective complaints: "there must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques, which could reasonably be expected to produce the symptoms alleged." 20 C.F.R. §§ 404.1529(b) and 416.929(b); accord Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992); Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984). The ALJ has the discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence. See LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988). The question is whether the ALJ's credibility analysis and finding is supported by the evidence of record as a whole. See 20 C.F.R. §§ 404.1529, 416.929. After concluding that Plaintiff could not perform her past relevant work, the ALJ proceeded to step five and considered Plaintiff's age, education, work experience, and vocational factors that govern her ability to perform other work in the national economy. 20 C.F.R. §§ 404.1560, 404.1563, 404.1564, 404.1565, 416.963, 416.964, and 614.965. Furthermore, the ALJ obtained a vocational expert, Mr. Meola, who testified that an individual with Plaintiff's symptoms could not perform Plaintiff's past work experience. However, there are other jobs that an individual in Plaintiff's situation could perform, such as document prep worker, hand mounter, card machine operator, and table worker. Mr. Meola testified that jobs within this realm existed in the aggregate of 900 in the local economy and 50,000 in the national economy. The ALJ properly relied on the testimony of the vocational expert and used Rule 201.29 of the medical vocational guidelines as a framework to conclude that Plaintiff was not disabled because she could perform

other jobs that existed in significant numbers in the national economy.  20 C.F.R. Part 404, Subpart P, Appendix 2; See Plummer v. Apfel, 181 F.3d 422, 431 (3d Cir. 1999).

## V.  CONCLUSION

For the reasons set forth above, and after a careful review of the record in its entirety, the Court finds that there is substantial evidence to support the Commissioner's final decision that Plaintiff was not disabled on, or prior to, April 24, 2006.  Accordingly, the Commissioner's determination is affirmed. An appropriate Order follows.


**s/ Faith S. Hochberg**
**Hon. Faith S. Hochberg, U.S.D.J.**